THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY BARLAGE | ) | CASE NO. |
| 3370 US Highway 22 NE | ) | |
| Somerset, Ohio 44783 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| THE BOEING COMPANY | ) | |
| 801 Irving Wick Drive W | ) | **JURY DEMAND ENDORSED** |
| Heath, Ohio 43056 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| THE BOEING COMPANY | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street | ) | |
| Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JOE CARPENTER | ) | |
| c/o The Boeing Company | ) | |
| 801 Irving Wick Drive W | ) | |
| Heath, Ohio 43056 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Ashley Barlage, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

**PARTIES**

1. Barlage is a resident of the City of Somerset, County of Perry, State of Ohio.

2. The Boeing Company (hereinafter "Boeing") is a foreign corporation that operated a business

   located at 801 Irving Wick Drive W, Heath, Ohio 43056.

3. Upon information and belief, Defendant Joe Carpenter is a resident of the state of Ohio.

4. Carpenter was at all times hereinafter mentioned, an individual who acted directly or indirectly in the interest of Boeing.

5. Carpenter made and/or participated in the adverse actions asserted herein.

## JURISDICTION & VENUE

6. All of the material events alleged in this Complaint occurred in the County of Licking.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Barlage is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*., under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2, and under the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. § 201 *et seq*.

8. This Court has supplemental jurisdiction over Barlage's state law claims pursuant to 28 U.S.C. § 1367 as Barlage's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Barlage filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-02841 against Boeing.

11. On or about March 5, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Barlage regarding the Charges of Discrimination brought by Barlage against Boeing in EEOC Agency Charge No. 532-2020-02841.

12. Barlage received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Barlage has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Barlage has properly exhausted his/her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Barlage is a former employee of Boeing.

16. Barlage is female.

17. Barlage began working for Boeing on or around December 7, 2018.

18. Boeing employed Barlage as a Modification Repair Technician.

19. Barlage suffers from anxiety and depression, which constitute a disability (hereinafter "Disability").

20. As a result of her Disability, Barlage is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq.*

21. As a result of her Disability, Barlage is and was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

22. Boeing perceived Barlage's disability limited one or more of her major life activities, including working.

23. Barlage's Disability substantially impaired one or more of her major life activities, including working.

24. Despite this actual or perceived disabling condition, Barlage was still able to perform the essential functions of her job.

25. In or around June 2019 a reorganization of employees led Barlage to begin working with Defendant Joe Carpenter.

26. Carpenter was Barlage's coworker.

27. Carpenter is male.

28. Carpenter engaged in frequent attempts to harass and sabotage Barlage (hereinafter "Carpenter's Harassment").

29. Carpenter's Harassment got worse as time went on.

30. Barlage was the only female working as a Repair Technician in their work area.

31. Carpenter engaged in Carpenter's Harassment because he believed women did not belong working at Boeing.

32. Carpenter's Harassment became more severe when Barlage was getting certifications because he believed women did not belong working at Boeing.

33. Carpenter's Harassment included daily harassing comments to Barlage regarding her appearing, clothing, and work.

34. In or around fall 2019, Carpenter's Harassment included Carpenter telling Barlage, "If you didn't wear your jeans painted on, [coworkers] wouldn't even like you." (hereinafter "'Jeans Painted On Comment'").

35. Barlage was offended by the "Jeans Painted On" Comment.

36. Carpenter did not make comments like the "Jeans Painted On Comment" to male employees at Boeing.

37. In or around fall 2019, Barlage reported Carpenter's Harassment to Matt Gulick and Chad Meyers. ("Barlage's First Report of Hostile Work Environment")

38. Gulick was Barlage's immediate supervisor.

39. Gulick is male.

40. During all material events asserted herein, Gulick has and/or had authority to hire, fire, and/or discipline employees.

41. Gulick did not participate in the decision to hire Barlage.

42. Meyers was Barlage's immediate supervisor.

43. Meyers is male.

44. During all material events asserted herein, Meyers has and/or had authority to hire, fire, and/or discipline employees.

45. Meyers did not participate in the decision to hire Barlage.

46. Upon information and belief, Defendants have a policy requiring investigations following receipt of a complaint of discrimination and harassment.

47. An investigation should include interviewing the complainant.

48. An investigation should include interviewing the subject of the complaint.

49. An investigation should include interviewing the subject of the reported incident.

50. An investigation should include interviewing witnesses to the reported incident.

51. An investigation should include getting a written statement from the complainant.

52. An investigation should include getting a written statement from the subject of the complaint.

53. An investigation should include getting a written statement from the subject of the reported incident.

54. In response to Barlage's First Report of Hostile Work Environment, Boeing did not interview Carpenter.

55. In response to Barlage's First Report of Hostile Work Environment, Boeing did not interview any witnesses.

56. In response to Barlage's First Report of Hostile Work Environment, Boeing did not get a written statement from Barlage.

57. In response to Barlage's First Report of Hostile Work Environment, Boeing did not get a written statement from Carpenter.

58. In response to Barlage's First Report of Hostile Work Environment, Boeing did not get a written statement from any witnesses.

59. In response to Barlage's First Report of Hostile Work Environment, Boeing did not take corrective action against Carpenter.

60. Boeing ratified Carpenter's discriminatory and harassing conduct in failing to conduct an investigation into Barlage's First Report of Hostile Work Environment.

61. Boeing ratified Carpenter's discriminatory and harassing conduct in failing to discipline Carpenter following Barlage's First Report of Hostile Work Environment.

62. By failing to take any corrective action against Carpenter following Barlage's First Report of Hostile Work Environment, Boeing allowed Carpenter's Harassment to continue.

63. In or around November 2019, Barlage was out on leave for surgery.

64. Carpenter's Harassment included breaking into Barlage's locked drawer while she was out on leave to get her stamp with the intent to sabotage her work (hereinafter "Sabotage").

65. Sabotage included improperly certifying incorrect work under Barlage's name with the stolen stamp.

66. Carpenter committed Stabotage because Barlage is female.

67. Carpenter committed Sabotage in attempt to further harass Barlage.

68. Carpenter commited Sabotage to make Barlage look bad.

69. Carpenter committed Sabotage to get Barlage disciplined.

70. Carpenter hoped Barlage would be disciplined as a result of his Sabotage.

71. In the first couple months of 2020, Carpenter's Harassment included sabotaging Barlage's work by tampering with wire harnesses Barlage had assembled (hereinafter "Tamper").

72. Carpenter did not Tamper with the work of male employees.

73. Boeing knew of Carpenter's Sabotage and Tamper.

74. Boeing investigated Carpenter's Sabotage.

75. Boeing took no corrective action against Carpenter for Sabotage or Tamper.

76. By failing to take any corrective action against Carpenter for Sabotage or Tamper, Boeing ratified the Hostile Work Environment and gender discrimination Barlage experienced due to Carpenter's Harassment.

77. Carpenter's Harassment was severe and pervasive.

78. Carpenter's Harassment offended Barlage.

79. Carpenter's Harassment interfered with Barlage's ability to do her job.

80. Barlage continued to report Carpenter's harassment to Matt Gulick and Chad Meyers approximately ten times, most recently in February 2020.

81. In response to Barlage's complaints regarding Carpenter's Harassment, Boeing did not interview Carpenter.

82. In response to Barlage's complaints regarding Carpenter's Harassment, Boeing did not interview any witnesses.

83. In response to Barlage's complaints regarding Carpenter's Harassment, Boeing did not get a written statement from Barlage.

84. In response to Barlage's complaints regarding Carpenter's Harassment, Boeing did not get a written statement from Carpenter.

85. In response to Barlage's complaints regarding Carpenter's Harassment, Boeing did not get a written statement from any witnesses.

86. In response to Barlage's complaint of discrimination and retaliation, Boeing did not take corrective action against Carpenter.

87. Boeing ratified Carpenter's discriminatory and harassing conduct in failing to conduct an investigation into Barlage's discrimination and harassment complaint.

88. Boeing ratified Carpenter's discriminatory and harassing conduct in failing to discipline Carpenter following Barlage's discrimination and harassment complaint.

89. By failing to take any corrective action against Carpenter following Barlage's repeated complaints of Carpenter's Harassment, Boeing allowed Carpenter's Harassment to continue.

90. Carpenter's Harassment exacerbated Barlage's Disability.

91. In March 2020, Barlage applied for FMLA due to Carpenter's Harassment exacerbating her Disability.

92. In March 2020, Defendant approved Barlage's request for FMLA.

93. In March 2020, Barlage utilized three weeks of FMLA leave.

94. When Barlage returned to work after her FMLA leave, she was again confronted with Carpenter's Harassment.

95. When Barlage returned to work after her FMLA leave, Carpenter's Harassment was severe.

96. In or around April 2020, due to Carpenter's Harassment, Barlage's Disability was again exacerbated.

97. Due to Barlage's Disability being exacerbated due to Carpenter's Harassment, Barlage called Boeing's leave center to request further leave.

98. Boeing denied Barlage's request for further leave.

99. On or about April 26, 2020, in response to Barlage's Disability being exacerbated due to Carpenter's Harassment, Barlage's doctor ordered her to take further leave (hereinafter "Doctor's Order").

100. As a result of her Doctor's Order, Barlage immediately informed Gulick and Meyer to tell them she would be unable to come to work due to her Disability.

101. On or about May 1, 2020, Michael Pitzen met with Barlage.

102. Pitzen worked for Boeing as the head of employee wellness.

103. Pitzen did not participate in the decision to hire Barlage.

104. Pitzen was aware of Barlage's First Report of Hostile Work Environment.

105. At the May 1, 2020 meeting, Pitzen informed Barlage Boeing was terminating her employment due to her absences.

106. To the extent Barlage had been absent, such absences were the result of her Disability being exacerbated by Carpenter's Harassment.

107. To the extent Barlage had been absent, her absences were protected under her approved FMLA Leave.

108. Boeing's purported reason for termination is pretext for gender discrimination.

109. Boeing's purported reason for termination is pretext for disability discrimination.

110. Boeing's purported reason for termination is pretext for retaliation for reporting hostile work environment.

111. Upon information and belief, Boeing has a progressive disciplinary policy ("Progressive Discipline Policy").

112. Boeing has used the Progressive Discipline Policy when disciplining male employees.

113. Boeing has used the Progressive Discipline Policy when disciplining non-disabled employees.

114. Boeing has used the Progressive Discipline Policy when disciplining male employees.

115. Boeing has used the Progressive Discipline Policy when disciplining employees who have not complained of discrimination and harassment.

116. Boeing has used the Progressive Discipline Policy when disciplining employees who have not used FMLA leave.

117. Boeing has used the Progressive Discipline Policy when disciplining employees who had not indicated a need for future FMLA leave.

118. Under Progressive Discipline Policy, Barlage had not received any meaningful discipline.

119. Under Progressive Discipline Policy, Barlage had not received any written warnings.

120. Under Progressive Discipline Policy, Barlage had not been suspended.

121. Boeing skipped steps under the Progressive Discipline Policy when they terminated Barlage's employment.

122. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

123. Skipping steps under the Progressive Discipline Policy is an adverse action.

124. Terminating Barlage's employment was an adverse employment action.

125. Terminating Barlage's employment was an adverse action.

126. Boeing knowingly skipped steps under the Progressive Discipline Policy when they terminated Barlage's employment.

127. Boeing intentionally skipped steps under the Progressive Discipline Policy when they terminated Barlage's employment.

128. Boeing willfully skipped steps under the Progressive Discipline Policy when they terminated Barlage's employment.

129. Boeing knowingly committed an adverse employment action against Barlage.

130. Boeing intentionally committed an adverse employment action against Barlage.

131. Boeing willfully committed an adverse employment action against Barlage.

132. Boeing knowingly committed an adverse action against Barlage.

133. Boeing intentionally committed an adverse action against Barlage.

134. Boeing willfully committed an adverse action against Barlage.

135. Boeing knowingly terminated Barlage employment.

136. Boeing intentionally terminated Barlage's employment.

137. Boeing willfully terminated Barlage's employment.

138. The above facts demonstrate Defendants engaged in a pattern and practice of gender discrimination.

139. The above facts demonstrate Boeing engaged in a pattern and practice of disability discrimination.

140. The above facts demonstrate Defendants engaged in a pattern and practice of retaliation.

141. There was a causal connection between Barlage's gender and Boeing's termination of Barlage's employment.

142. There was a causal connection between Barlage's disability and Boeing's termination of Barlage's employment.

143. There was a causal connection between Barlage's discrimination and harassment complaint and Boeing's termination of Barlage's employment.

144. There was a causal connection between Barlage's use of FMLA leave and Boeing's termination of Barlage's employment.

145. There was a causal connection between Barlage's request for future FMLA leave and Boeing's termination of Barlage's employment.

146. Upon information and relief, Carpenter is still employed at Boeing.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

### (Against Boeing Only)

147. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

149. Boeing is a covered employer under the FMLA.

150. During her employment, Barlage qualified for FMLA leave.

151. During her employment, Barlage attempted to request FMLA leave asking the Boeing leave center for additional FMLA leave.

152. Boeing unlawfully interfered with Barlage's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

153. Boeing's act of terminating Barlage's employment upon her request for additional FMLA leave violated and interfered with Barlage's FMLA rights.

154. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Barlage's FMLA rights when Defendants did not honor Barlage's approved use of FMLA leave.

155. As a direct and proximate result of Defendants' conduct, Barlage is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

### (Against Boeing Only)

156. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

157. During her employment, Barlage utilized FMLA leave.

158. After Barlage utilized her qualified FMLA leave, Boeing retaliated against her.

159. Boeing retaliated against Barlage by terminating her employment.

160. Boeing willfully retaliated against Barlage in violation of U.S.C. § 2615(a).

161. As a direct and proximate result of Boeing's wrongful conduct, Barlage is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

### COUNT III: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000e-2.

### (Against Boeing Only)

162. Barlage restates each and every prior paragraph of this Complaint as if it were fully restated herein.

163. Barlage is a member of a statutorily protected class based on her gender under 42 U.S.C. 2000e-2.

164. Boeing treated Barlage differently than other similarly situated employees based on her gender.

165. Boeing discriminated against Barlage on the basis of her gender throughout her employment with the company.

166. Boeing terminated Barlage's employment without just cause.

167. Boeing terminated Barlage's employment based on her gender.

168. Boeing's discrimination against Barlage based on her gender violates 42 U.S.C. 2000e-2.

169. As a direct and proximate result of Defendants' conduct, Barlage suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF §4112.02

### (Against Boeing Only)

170. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

171. Barlage is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

172. Boeing treated Barlage differently than other similarly situated employees based on her gender.

173. Boeing discriminated against Barlage on the basis of her gender throughout her employment with the company.

174. Boeing terminated Barlage's employment without just cause.

175. Boeing terminated Barlage's employment based on her gender.

176. Boeing's discrimination against Barlage based on her gender violates R.C. § 4112.01 *et seq.*

177. Barlage suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

178. As a direct and proximate result of Defendants' conduct, Barlage suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER DISCRIMINATION

### (Against Boeing Only)

179.  Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

180. During her employment with Boeing, Barlage was subjected to offensive and harassing conduct by Carpenter based on her gender.

181. Boeing knew or should have known of the harassing conduct against Barlage by Carpenter.

182. Boeing condoned, tolerated and ratified this harassing conduct.

183. This harassing conduct was severe and/or pervasive.

184. This harassing conduct was offensive to Barlage.

185. This harassing conduct interfered with Barlage's ability to perform her job duties.

186. Carpenter's offensive and harassing conduct created a hostile and/or abusive work environment for Barlage.

187. Carpenter's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Barlage.

188. Barlage suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

189. As a direct and proximate result of Boeing's conduct, Barlage has suffered and will continue to suffer damages, including economic and emotional distress damages.

### **COUNT VI: RETALIATION IN VIOLATION OF 42 U.S.C. §2000e-3(a)**

### **(Against Boeing Only)**

190. Barlage restates each and every prior paragraph of this complaint as if it were fully restated herein.

191. As a result of Carpenter's discriminatory and harassing conduct described above, Barlage complained about the harassment she was experiencing.

192. After engaging in protected complaints, Barlage suffered adverse actions.

193. After engaging in protected complaints, Barlage's employment was terminated.

194. Boeing's actions were retaliatory in nature based on Barlage's opposition to the unlawful discriminatory and harassing conduct.

195. Barlage suffered emotional distress as a result of Boeing's conduct, and is entitled emotional distress damages pursuant to Title VII, 42 U.S.C. § 2000e-3 *et seq*.

196. As a direct and proximate result of Boeing's retaliatory discrimination against and termination of Barlage's employment, Barlage suffered and will continue to suffer damages.

## COUNT VII: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

### (Against Boeing Only)

197. Barlage restates each and every prior paragraph of this complaint, as if it were fully restated herein.

198. As a result of the Carpenter's discriminatory and harassing conduct described above, Barlage complained about the gender discrimination and harassment she was experiencing.

199. Subsequent to Barlage reporting gender discrimination and harassment to her supervisors, Barlage's employment was terminated.

200. Defendant's actions were retaliatory in nature based on Barlage's opposition to the unlawful discriminatory conduct.

201. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

202. Barlage suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

203. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Barlage, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VIII: DISABILITY DISCRIMINATION

### (Against Boeing Only)

204. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

205. Barlage suffers from anxiety and depression.

206. Barlage is disabled.

207. In the alternative, Boeing perceived Barlage as being disabled.

208. Barlage's condition constituted a physical impairment.

209. Barlage's condition substantially impaired one or more of her major life activities including working.

210. Boeing perceived Barlage's condition to impair one or more of her major life activities including working.

211. Boeing treated Barlage differently than other similarly-situated employees based on her disabling condition.

212. Boeing treated Barlage differently than other similarly-situated employees based on her perceived disabling condition.

213. On or about May 1, 2020, Boeing terminated Barlage's employment without just cause.

214. Boeing terminated Barlage's employment based her disability.

215. Boeing terminated Barlage's employment based her perceived disability.

216. Boeing violated R.C. §4112.01 *et seq.* when it discharged Barlage based on her disability.

217. Boeing violated R.C. §4112.01 *et seq.* when it discharged Barlage based on her perceived disability.

218. Boeing violated R.C. §4112.02 by discriminating against Barlage based on her disabling condition.

219. Boeing violated R.C. §4112.02 by discriminating against Barlage based on her perceived disabling condition.

220. Boeing violated The American with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 *et seq.*

221. Barlage suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

222. As a direct and proximate result of Boeing's conduct, Barlage suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IX: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

### (Against Boeing Only)

223. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

224. Barlage informed Boeing of her disabling condition.

225. Barlage requested accommodations from Boeing to assist with her disabilities including a short period of time of work to deal with her disabling condition.

226. Barlage's requested accommodations were reasonable.

227. There was an accommodation available that would have been effective and would have not posed an undue hardship to Boeing.

228. Boeing failed to engage in the interactive process of determining whether Barlage needed an accommodation.

229. Boeing failed to provide an accommodation.

230. Boeing violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

231. As a direct and proximate result of Boeing's conduct, Barlage suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT X: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 et. seq.

### (Against Boeing Only)

232. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

233. Barlage informed Boeing of her disabling condition.

234. Barlage requested accommodations from Boeing to assist with her disabilities including a short period of time off work to deal with her disabling condition.

235. Barlage's requested accommodations were reasonable.

236. There was an accommodation available that would have been effective and would have not posed an undue hardship to Boeing.

237. Boeing failed to engage in the interactive process of determining whether Barlage needed an accommodation.

238. Boeing failed to provide an accommodation.

239. Boeing violated R.C. §4112.02 by failing to provide Barlage a reasonable accommodation.

240. Barlage suffered emotional distress as a result of Boeing's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

241. As a direct and proximate result of Boeing's conduct, Barlage suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT XI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

### (Against Carpenter Only)

242. Barlage restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

243. Pursuant to R.C. § 4112.02(J), it is unlawful "[f] or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

244. Carpenter aided, abetted, incited, coerced, and/or compelled Boeing's discriminatory termination of Barlage.

245. Carpenter violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

246. Barlage suffered emotional distress as a result of Carpenter's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

247. As a direct and proximate result of Carpenter's conduct, Barlage has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Barlage demands from Defendants the following:

(a) Issue an order requiring The Boeing Company to restore Barlage to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Barlage for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Barlage's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha M. Breedlove*

Trisha M. Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Ste 307
Columbus, OH 43229
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  trisha.breedlove@spitzlawfirm.com

*Attorney For Plaintiff*

## JURY DEMAND

Plaintiff Ashley Barlage demands a trial by jury by the maximum number of jurors permitted.


*/s/ Trisha M. Breedlove*
Trisha M. Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**